(C.D. 4110)

PISTORINO & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 28, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and
*Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of a wire drawing machine which was exported from Sweden in June of 1964, and entered at the port of Boston, Mass., on June 22, 1964, at a value expressed in United States dollars of $51,637.00. The basis for this statement of entered value is an endorsement on the first page of the entry document which reads:

$$\text{I.V.–S.W. CRS.} \quad 285400.00$$
$$\text{Less ND– } \quad \text{“} \quad 19700.00$$
$$\text{E.V.–} \quad 265700.00$$

The accompanying special customs invoice, prepared by AB Skandia-transport for AB Arboga Mekaniska Verkstad, the seller, on June 3, 1964, contains the following typed information under Part IV relative to entered value:

| Quantity and Full Description of Goods | Invoice Unit Price or Value Sw. Crs. |
|---|---|
| 1 Wire Drawing Machine type Beeline Manuf. no. CT–1022 | 285400:– |

The following charges are included in the price mentioned above:

| | | |
|---|---|---|
| Ocean freight | Sw. Crs. | 9315:– |
| Insurance | " | 1425:– |
| Freight and brokers fee in the U.S. | | 8960:– |
| Buying commission to M.H. Machines, Chagrin Falls | Sw. Crs. | 34800:– |
| U.S. Customs Duty | Sw. Crs. | 32500:– |

The merchandise was appraised on October 21, 1965, at the invoiced unit value less item (x), packed [i.e., less ocean freight, insurance, freight and brokers fee in the U.S., and U.S. Customs duty] or at Sw. Crs. 233,200 (U.S. $45,321). And the entry was liquidated as appraised on November 22, 1965.

On December 17, 1965, plaintiff filed a protest against said entry which reads:

Reference 30193 Dec. 16, 1965

Honorable John M. Lynch
Collector of Customs
Boston, Mass.

Attn. Miss Katherine Donahue
     Chief Liquidator

RE: Consumption Entry 37103 Dated June 19, 1964
     Liquidated Nov. 22, 1965

Sir:

We hereby protest the liquidation of the above captioned entry. It is our contention that the item of SwCrs. 34800. Buying Commission, indicated on the invoice is an non-dutiable item. At the time of entry we failed to include this amount in the non-dutiable items.

This clerical error on our part was called to your attention in letter dated June 30, 1964 when we advised we failed to deduct the buying commission and duty from the entry value, and requested that it be taken into consideration.

Respectfully,
PISTORINO & Co. INC.
A. M. Low
Vice President

And by way of amendment the following language was added to the above protest:

It is further claimed that the liquidation of the entry is illegal, null and void, a notice of appraisement not having been issued in accordance with Section 501, Tariff Act of 1930.

The letter of June 30, 1964 referred to in the protest (received in evidence at the trial as exhibit 1) reads:

Reference 30193                                                     June 30, 1964
   Collector of Customs
   Boston, Massachusetts
   Dear Sir:                                         re: D.P. 37103 of 6/19/64
                                                         8 cs. machinery

   The invoice value of above shipment included duty and buying commission which was not deducted from entry value.

   Please take this clerical error into consideration when appraising merchandise; importer claims refund of $1961.85 due him.

                                                         Very truly yours,
                                                  PISTORINO & COMPANY, INC.
                                                         A. M. Low

The issue before the court as seen by plaintiff relates to the legality of the appraisement, more particularly, whether the letter incorporated in the protest constitutes a request for a notice of appraisement within the meaning of 19 U.S.C.A., section 1501 (section 501, Tariff Act of 1930, as amended by the Customs Simplification Act of 1953). Section 1501 reads:

   (a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney . . . (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. . . .

On the other hand the primary issue before the court as seen by defendant relates to the jurisdiction of the court to entertain the protest, more particularly, whether a justiciable issue cognizable under sections 514 and 520(c)(1) of the Tariff Act of 1930, as amended, is presented in the protest.

When a motion to dismiss this case was first filed the court noted the letter of June 30, 1964 (exhibit 1) from the importer to the collector complaining that two non-dutiable charges—duty and buying commission—had not been deducted from the entered value due to a clerical error on the part of the broker; that the defendant in the motion to dismiss had not denied the receipt of the letter; that one of the two claimed non-dutiable charges mentioned in the letter had been deducted; that the letter put the collector on notice, by implication at least, that a written notice of appraisement was being requested; that the plaintiff had filed its motion to amend with the defendant for concurrence March 20, 1967, and the defendant's reaction was a motion to dismiss filed three months later.

The court also noted the following distinctions between the facts in the case of *Heemsoth Kerner Corporation* v. *United States*, 31 Cust. Ct. 113, C.D. 1554 (1953), relied upon by defendant in its motion to dismiss, and this Pistorino case:

> 1. In the *Heemsoth* case there was no communication by the plaintiff to the collector until *after* appraisement and liquidation when a protest was filed. As the court held, the question of notice was not raised or in *anyway implied* by the original protest.
>
> 2. In the Pistorino case the letter of June 30, 1964 was sent to the collector *before* appraisement and liquidation, and in our view indicated a desire to be apprised of any action taken in appraisement or a request for a written notice of appraisement. This letter and its content are specifically referred to in plaintiff's original protest, and the language used is sufficient to permit it being construed to sustain an amended claim that "the liquidation of the entry is illegal, null and void, a notice of appraisement not having been issued in accordance with Section 501, Tariff Act of 1930."

In view of these observations the court was of the view that it should not make final disposition of the case without plaintiff having an opportunity to be heard at a trial, and denied the motion to dismiss, and denied a motion to vacate its order denying the motion to dismiss.

The trial of this case further impresses the court that the issue here is primarily one as to the legality of the appraisement. While it is true that the letter of June 30, 1964 (exhibit 1) incorporated in the protest by reference employs the words "clerical error", we think that such words, read in context with events transpiring at the time of their utterance, denotes the writer's characterization of the nature of the importer's error. However, exhibit 1 does apprise the collector of a state of facts designed to influence that official's actions in relation to the importer's interests in the matter, just 8 days after the filing of the subject entry. It is to be noted that 19 U.S.C.A., section 1487 (section 487, Tariff Act of 1930, as amended by the Customs Simplification Act of 1953) mandates that any amendment to the entered value be made as of the time of making entry. And it seems apparent that since the importer could not, *vis-a-vis* section 1487, amend the entry to effect the desired reduction in entered value as of June 30, 1964, even though the entry had not then come under the surveillance of the appraiser, the importer did the next best thing, namely, put the collector on notice of what the entered value should have been as of the time of appraisement, and before actual appraisement. And since, at such time the letter depicted in exhibit 1 was directed to the collector and not to the appraiser we do not interpret it as being an attempt on the importer's part to influence the appraiser's decision as to value. We think exhibit 1 was intended to protect the importer's rights in the premises in the event it turned out that the appraiser's decision as to value did

not coincide with the importer's view as to value, as communicated to the collector in exhibit 1. And this, by attempting to impose further responsibilities on the collector in the appraisement proceeding toward the importer in such event.

Exhibit 1 does not lay a foundation for the pursuit of a claim of "clerical error" as contemplated by sections 514 and 520 (c) (1). We view the amendment to the protest as a corollary to the language of a protest attacking legality of the appraisement rather than as an addition to a "clerical error" protest.

In line with the court's belief as to the issue presented here, we are also of the opinion that a collector, being in receipt of a notice such as is set forth in exhibit 1 together with knowledge of the background facts connected with a particular entry affected thereby, could reasonably be expected to interpret the letter as a request for a notice of appraisement within the meaning of section 1501. Of course, exhibit 1 does not say in precise language "I request a written notice of appraisement." But the statement in exhibit 1, "Please take this clerical error into consideration when appraising merchandise" is, in our opinion, sufficient to advise the collector of the plaintiff's desire to receive a notice of appraisement, that is, whether or not the appraiser had credited him with the claimed non-dutiable charge, bearing in mind the fact that the only consideration that the collector, as distinguished from the appraiser, could give the importer at this point while in privity with the appraisement proceeding would be to give the importer a notice of appraisement since both the importer and appraiser are then known to him to be at variance on the value of the merchandise covered by the entry. In fact, merely saying, "I request a written notice of appraisement", would not suffice to entitle the importer to such a notice, absent a statement of substantial reason therefor. *Inlander-Steindler Paper Co.* v. *United States*, 45 Cust. Ct. 446, 451, R.D. 9756 (1960). And it is fair to say here that the statement of reason set forth in exhibit 1 compels the conclusion that a notice of appraisement was what the importer desired to have the collector give him.

Clause 3 of subsection (a) of section 1501 was added by the Congress with a view toward enlarging the opportunities accorded to the importer to pursue his judicial remedies in appraisement matters. U.S. Code Cong. & Adm. News (1953) page 2296. Senate Finance Committee Report No. 632 to accompany H.R. 5877 (Customs Simplification Act of 1953) states with reference to said Clause 3 as proposed in the House:

> Subsection (c) amends section 501 of the present act to require additional notices of appraisement. Under present law, notice is given in most cases only if the appraiser "advances" the entered

value, and amendments to entries are at times necessary to assure that notice will be given and judicial review thus made available. * * *

Hence, the provision is to be given a liberal construction consistent with the object sought to be achieved thereby. And the court is loathe to stand on ceremony concerning the use of the technical language of a statute designed to protect the importer's rights to judicial review when a collector is aware that there has been substantial compliance therewith. *Clinton Smullyan Associates* v. *United States*, 35 CCPA 7, 9, C.A.D. 363 (1947).

On the question of whether the original of exhibit 1 ever reached the attention of the collector, the plaintiff argues in its brief that it did, while defendant without producing a witness or specifically denying its receipt directed its arguments at the trial and in its brief against its admissibility as a document under the Federal Business Records Act, 28 U.S.C.A., section 1732(a).

At the trial exhibit 1 was received into evidence under the business entry rule over objection of defendant's counsel and on the strength of the testimony of a witness whom the record discloses had no personal knowledge of the preparation of the document or of the delivery or mailing of it to the collector. Such a lack of personal knowledge may affect the weight and credibility of the document, but does not affect its admissibility. Also, the witness, Edward J. Donald, employed by plaintiff to handle protests, appeals, liquidations, and related items, was allowed to testify without objection by defendant's counsel as follows (R. 16):

Q. Was Exhibit 1 for Identification, the exhibit that I have just given you, prepared by Pistorino & Company Incorporated?—A. Yes, it was.

Q. Was this Exhibit 1 for Identification prepared under your supervision or direction?—A. No, it was not.

Q. Was it prepared by a member of Pistorino & Company Incorporated in the ordinary course of the business of Pistorino & Company?—A. Yes, it was.

Q. Is this an exact copy of a letter that was sent by your company to the district director of customs in Boston, dated June 30, 1964?—A. Yes, it is.

Such testimony, not objected to, would qualify exhibit 1 for admission into evidence as a copy of a letter sent to the collector. Federal Business Records Act, 28 U.S.C.A., section 1732(a).

Mr. Donald stated that he did not know if the original of exhibit 1 was received by the collector. And although he testified that he subsequently talked with Customs Examiner John Connolly on the subject of clerical error, he did not state that the document was the topic of such conversation. So, as the record now stands there is no evidence

that the implied request indicated by exhibit 1 was actually received by the collector. Nor is there a specific denial of its receipt.

On this state of the record the court would ordinarily be inclined to set aside the submission and reopen the case for further evidence as to whether the notice evidenced by exhibit 1 was in fact received by the collector—the defect in proof here appearing to be a curable one. However, there appears to be a basis in the record for final disposition of the instant protest.

It is noted that liquidation of the involved entry occurred on November 22, 1965, or just 32 days after the merchandise was appraised. As such, appraisement never became final, the time within which the collector might appeal therefrom not having expired at the time of liquidation. Under 19 U.S.C.A., section 1503(a) the collector has but one value upon which he can lawfully assess duty, and that is the final appraised value of the merchandise which does not become final until the expiration of 60 days after the appraisement. Liquidation of an entry prior to the expiration of the time for appeal to reappraisement is null and void. *United States* v. *Boston Paper Board Co.,* 23 CCPA 372, T.D. 48233 (1936). And the effect of such premature liquidation is to void the appraisement as there was no official act of the collector accepting the appraisement. *United States* v. *Boston Paper Board Co., supra.* Consequently, the matter must be remanded to a single judge of this court, pursuant to 28 U.S.C.A., section 2636 (d) to determine the value of the merchandise herein in the manner provided by law.

Judgment will be entered herein accordingly.